313 Ga. 686
FINAL COPY

S22Y0687.  IN THE MATTER OF PHILLIP NORMAN GOLUB.

PER CURIAM.

This disciplinary matter is before the Court pursuant to the report and recommendation issued by Special Master Jack Jeffrey Helms, Jr., who recommends that respondent Phillip Norman Golub (State Bar No. 300503) be suspended from the practice of law for one year with conditions on his reinstatement, based on his failure to complete a client's work, adequately communicate with her, and refund his unearned fee.

In October 2019, the State Bar filed a formal complaint[1] against Golub; Golub filed an answer; and the State Bar then filed

---

[1] Golub previously had filed a petition for voluntary discipline related to this disciplinary matter, seeking a public reprimand, which this Court rejected. See *In the Matter of Golub*, 306 Ga. 620, 621-622 (832 SE2d 332) (2019) (rejecting petition for voluntary discipline seeking public reprimand, because it was not entirely clear from the admitted facts that Golub violated Rule 8.4 (a) (4) of the Georgia Rules of Professional Conduct, which prohibits lawyers from engaging in professional conduct involving dishonesty, fraud, deceit, or misrepresentation, and because Golub had failed to refund his unearned fee or state his intention to do so).

a motion for summary judgment, to which Golub responded. Following oral argument, the Special Master granted the State Bar's motion for summary judgment and subsequently held a hearing on the issue of level of discipline. Following that hearing, the Special Master issued his report and recommendation, in which he combined his rulings on the motion for summary judgment with the recommendation of discipline. We agree with the Special Master that a one-year suspension with conditions on reinstatement is the appropriate discipline in this matter.

1. *The facts.*

In the report, the Special Master found the following facts to be undisputed in the record. In 2014, a client retained Golub, who has been a member of the State Bar since 1980, to represent her in a matter involving a fraudulent transfer of real property. While Golub agreed to represent the client, he did not have her sign an engagement agreement. The client was elderly and in poor health, and her condition impaired her ability to communicate. As a result, Golub primarily communicated with her son. Golub charged the

2

client $7,500 in attorney fees related to this matter, which was paid in three installments of $2,500 over the course of two years.

In 2015, Golub filed two lawsuits on the client's behalf against several defendants — one in January and one in June. After being served with the lawsuits, some of the defendants filed motions to dismiss, and Golub filed responses. Throughout his communications with Golub, the client's son was under the impression that the defendants had not responded to the lawsuits and that the cases would be placed on the trial calendar. The defendants also served discovery requests and requested the client's deposition; however, due to the client's health, Golub did not think she could handle a deposition or engage in discovery, so he delayed her deposition and continued to extend the discovery period in both cases. Discovery in the January 2015 lawsuit was extended six times, and as of January 2017, two years after the lawsuit was filed, the parties still had not conducted discovery. Moreover, during this two-year period, Golub did not serve responses to the defendants' written discovery requests, serve written discovery requests on the defendants,

conduct depositions, file motions in the case, try to settle or otherwise conclude the case, or make any efforts to get the case on the trial calendar. Discovery in the June 2015 case also was extended several times, and as of January 2017, a year-and-a-half after that case was filed, the parties had not conducted discovery. As in the first case, during this period of time, Golub did not serve responses to the defendants' written discovery requests, serve written discovery requests on the defendants, conduct any depositions, try to settle or otherwise conclude the case, or make any efforts to get the case on the trial calendar.

The client's son attempted to contact Golub on numerous occasions regarding the status of his mother's cases, but Golub did not always respond to his requests and failed to inform the client or her son when the trial court set the cases for a hearing in April 2017 on the defendants' motions to dismiss.[2] Golub ultimately filed voluntary dismissals without prejudice in the cases, but failed to

---

[2] The record shows that Golub was hospitalized for approximately 12 days in March and April 2017 and spent seven or eight of those days on full life support.

inform the client or her son that he did so until the son contacted him in June 2017. Golub subsequently filed renewal actions in the client's cases in October 2017, but did not inform the client or her son that he had done so, and also failed to serve the defendants in the renewal actions. Prior to the refiling, in September 2017, the client passed away, although Golub was unaware of this because he did not attempt to communicate with her or her son even after he filed the renewal actions.

As a result, Golub failed to substitute a party to the lawsuits and did not file anything with the trial court regarding the client's death, and in October 2018, the defendants in one of the cases filed a suggestion of death. The defendants also filed motions to dismiss and asked the court to hold a hearing as soon as possible. Golub again filed dismissals without prejudice in both cases, and again failed to inform the son that he dismissed the lawsuits. Golub also did not do any research to determine what, if any, impact dismissing the lawsuits for a second time would have on the client's estate being able to continue to pursue her claims, and he also did not do any

5

research to determine whether the client's estate would be prevented from refiling the lawsuits once a representative was appointed. Finally, the Special Master determined that Golub failed to provide any billing records to the client or her son; failed to refund the fee he was paid that he did not earn; and failed to complete work on the client's cases.

2. *The Special Master's conclusions of law.*

The Special Master stated that the State Bar alleged in its motion for summary judgment that Golub's acts and omissions violated Rules 1.2 (a), 1.3, 1.4 (a), 1.16 (d), 3.2, and 8.4 (a) (4) of the Georgia Rules of Professional Conduct. The maximum sanction for a violation of Rules 1.2, 1.3, and 8.4 (a) (4) is disbarment, while the maximum sanction for a violation of Rules 1.4, 1.16, and 3.2 is a public reprimand.

In regard to Rule 1.2 (a), the Special Master determined that a lawyer is required to consult with the client and abide by the client's decisions concerning the scope of representation. See *In the Matter of Garnett*, 278 Ga. 527, 528 (603 SE2d 281) (2004) (lawyer violated

6

Rule 1.2 when he failed to contact client about trial date or discuss case with client prior to trial). With respect to the means by which the client's objectives are to be pursued, the Special Master further determined that a lawyer shall consult with the client as required by Rule 1.4 (a) (2) and may take such actions as impliedly authorized in order to carry out the representation. See Rule 1.2, Comment [1]. See also *In the Matter of Steckbauer*, 293 Ga. 893, 894 (750 SE2d 363) (2013) (lawyer violated Rule 1.2 by failing to consult with client and abide by her decisions). Here, the Special Master concluded that Golub violated Rule 1.2 (a) when he did not inform his client or her son about the trial calendar and when he dismissed the two lawsuits he had filed on behalf of the client without consulting her. The Special Master concluded that Golub also violated Rule 1.2 (a) when he filed renewal actions on behalf of the client without notifying her or her son that he intended to do so.

In regard to Rule 1.3, the Special Master determined that a lawyer's lack of diligence may result in prejudice to a client's interests, see, e.g., *In the Matter of Shearouse*, 266 Ga. 848, 848-849

(472 SE2d 294) (1996) (disbarring lawyer who allowed statute of limitation to expire in one client's case and failed to set aside foreclosure for another client), and that Rule 1.3 requires a lawyer to meet deadlines and appear at scheduled hearings. Moreover, the Special Master noted that Rule 1.3, Comment [3] states that "[a] client's interests often can be adversely affected by the passage of time or the change of conditions," and that even when the client's interests are not affected in substance by delay, "unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness."

The Special Master concluded that Golub violated Rule 1.3 when he failed to prosecute the lawsuits filed on behalf of his client, and that while discovery was extended, Golub failed to serve responses to the defendants' discovery requests, did not serve written discovery requests on the defendants, did not conduct any depositions, did not file any motions, did not try to settle or otherwise conclude the cases, and did not make any efforts to get the cases on a trial calendar. The Special Master further concluded that

8

Golub did not serve the defendants in the renewal actions or substitute a party after the client had passed away. Moreover, the Special Master concluded that Golub admitted that he failed to complete work on the client's cases. Finally, the Special Master concluded that Golub did not diligently represent his client as he took no steps to advance or attempt to resolve the cases, and when faced with motions to dismiss filed by the defendants, he simply dismissed the cases instead of defending against such motions and representing the client's interests, resulting in significant detriment to her and her cases. See, e.g., *In the Matter of Graham*, 306 Ga. 380, 380 (829 SE2d 67) (2019) (lawyer violated Rule 1.3 where he filed lawsuit on client's behalf but failed to appear at hearing resulting in lawsuit's dismissal); *In the Matter of Raulin*, 299 Ga. 283, 283-284 (787 SE2d 691) (2016); *In the Matter of Lea*, 297 Ga. 797, 797 (778 SE2d 229) (2015).

Next, in regard to Rule 1.4, the Special Master concluded that a lawyer's regular communication with clients will minimize the occasions on which a client will need to request information

9

concerning the representation, see Rule 1.4, Comment [4], and that a lawyer violates Rule 1.4 when he fails to keep his client updated about the status of her case and fails to respond to a client's requests for information. See *In the Matter of Murray*, 295 Ga. 71, 72 (757 SE2d 134) (2014); see also *In the Matter of Garcia*, 303 Ga. 537, 537-538 (813 SE2d 591) (2018). The Special Master determined that the undisputed evidence showed a Rule 1.4 (a) violation where the client's son attempted to contact Golub on numerous occasions for an update on his mother's cases but did not always get a response from Golub; that Golub also did not notify his client or her son that he dismissed the lawsuits in April 2017 until two months later when the son contacted him; that when Golub filed renewal actions, he did so without communicating with his client or her son; and that after he filed the renewal actions and until he dismissed them a year later he had no communication with the son. Moreover, the Special Master concluded that Golub failed to inform his client and her son of significant proceedings and events in violation of Rule 1.4 (a).

The Special Master concluded that Golub violated Rule 1.16 (d) when he failed to complete work on his client's cases and failed to refund any fee that he was paid that he did not earn. See *In the Matter of Fair*, 300 Ga. 655, 656 (797 SE2d 490) (2017); *In the Matter of Hentz*, 300 Ga. 413, 414 (794 SE2d 649) (2016). The Special Master further concluded that while Golub maintained that he did significant work on the client's cases, he had not put forth any evidence of doing so, nor had he made any effort to refund any unearned fee.

The Special Master also concluded that Golub violated Rule 3.2 when he failed to prosecute and expedite the lawsuits filed on behalf of the client. Specifically, the Special Master cited Golub's failure, for two years while discovery was extended, to serve responses to the defendants' discovery requests, to serve written discovery requests on the defendants, to conduct any depositions, to file any motions, to try to settle or otherwise conclude the cases, or to make any efforts to get the cases on the trial calendar. Moreover, the Special Master noted that Golub also failed to serve the defendants

in the renewal actions or substitute a party after the client passed away, and generally failed to do anything of substance to advance the cases or attempt to resolve the cases.

Finally, as to Rule 8.4 (a) (4), the Special Master stated that Rule 1.0 (i) defines "fraud" as conduct that has a "purpose to deceive," and that while the Georgia Rules of Professional Conduct do not define dishonesty, this Court has defined "conduct involving dishonesty, fraud, deceit, or misrepresentation" under Rule 8.4 (a) (4) to mean "conduct that is intended or likely to mislead another." *In the Matter of Woodham*, 296 Ga. 618, 625 (769 SE2d 353) (2015). The Special Master further determined that misrepresentations made to clients constitute misconduct under Rule 8.4 (a) (4), see, e.g., *In the Matter of Hardwick*, 297 Ga. 808, 808-809 (777 SE2d 442) (2015) (lawyer violated Rule 8.4 (a) (4) when he misrepresented to client the filing status of a motion for expedited bond that lawyer filed on behalf of client); *In the Matter of Hardwick*, 288 Ga. 60, 61 (701 SE2d 163) (2010) (lawyer violated Rule 8.4 (a) (4) when he failed to respond to court order resulting in default judgment and

12

then failed to inform clients of default judgment); *In the Matter of Hammock*, 278 Ga. 385, 387 (602 SE2d 658) (2004) (lawyer violated Rule 8.4 (a) (4) where he misled his client into believing that her cases were pending long after they were time-barred or dismissed), and that even a negligent misrepresentation is sufficient for the imposition of discipline under Rule 8.4 (a) (4), see *In the Matter of Roberts*, 284 Ga. 445, 446 (668 SE2d 256) (2008) (holding that negligent misrepresentation is sufficient for the imposition of discipline under Rule 8.4 (a) (4)).

Here, the Special Master concluded that the undisputed evidence demonstrated that Golub misled the client's son about the client's cases. Specifically, the Special Master noted that throughout his communications with Golub, the son was under the impression not only that the defendants had failed to answer and were in default but also that Golub had initiated discovery on behalf of the client and was making efforts to move the cases along and get them on the court's calendar. And although Golub denied telling the son this, he had no explanation as to why the son would otherwise

believe that the cases were in default. Furthermore, the Special Master determined that it was undisputed that Golub dismissed the two lawsuits first in April 2017 but did not inform his client or her son of the dismissals until June 2017 after the son contacted him; that subsequently, Golub refiled the lawsuits but did not notify his client or her son; and that it was, therefore, reasonable to conclude that through Golub's conduct and failure to communicate the status of the cases, his client was misled into thinking that the cases were either pending when they were not or that they were still dismissed when, in fact, they had been refiled. The Special Master further determined that while Golub's actions and conduct may not have been intended to mislead his client and her son, if his actions were "likely to mislead" them, Golub was still in violation of Rule 8.4 (a) (4). *Woodham*, 296 Ga. at 625.

Accordingly, the Special Master held that the State Bar had carried its burden of proving that there was no genuine issue of material fact on any of its claims that Golub violated the above rules

and that the Bar was entitled to summary judgment as a matter of law.

3. *The Special Master's recommendation of discipline.*

For his violations of Rules 1.2 (a), 1.3, 1.4 (a), 1.16 (d), 3.2, and 8.4 (a) (4), the Special Master recommended that Golub be suspended for one year with reinstatement conditioned on his full refund of the $7,500 in attorney fees paid to him for the underlying matter and any cost associated with paying this money into the client's estate in probate so that the money can be paid back to the client's heirs. In determining the appropriate level of discipline, the Special Master stated that he considered this Court's precedent in similar disciplinary cases and the ABA Standards for Imposing Lawyer Sanctions. See *In the Matter of Morse*, 265 Ga. 353, 354 (456 SE2d 52) (1995), overruled on other grounds by *In the Matter of Cook*, 311 Ga. 206, 207-208 (857 SE2d 212) (2021).

The Special Master stated that in imposing a sanction after determining that there is lawyer misconduct, ABA Standard 3.0 provides that a court should consider the duty violated, the lawyer's

mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors. The Special Master also determined that the rules violated by Golub prescribe and proscribe some of the most important obligations and prohibitions to which a lawyer's conduct must conform, and that in determining the nature of the ethical duty violated, the ABA Standards assume that the most important ethical duties are those obligations which a lawyer owes to clients including, but not limited to, the duties of diligence, competence, and candor. See ABA Standards II (theoretical framework).

In terms of Golub's mental state, the Special Master determined that Golub knowingly failed to work on his client's cases and that his violations in general were knowing and not inadvertent or negligent. As to injury, the Special Master stated that the ABA Standards define injury as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct," see ABA Standards III; that the ABA Standards further define potential injury as "the harm to a client, the public, the legal system

16

or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct," id.; and that the extent of the injury is defined by the type of duty violated and the extent of actual or potential harm, with there being various levels of injury, see ABA Standards II. Here, the Special Master concluded that Golub's failure to work on his client's cases resulted in Golub's having no choice but to dismiss the lawsuits when the cases were placed on a trial calendar; that after his client passed away, having failed to substitute a party, Golub had no choice but to dismiss the lawsuits a second time; and that while it was uncertain what legal options his client's estate may have had then or may have now in the underlying litigation, the injury to the client here was significant.

As for duties owed, the Special Master noted that a lawyer has a duty to diligently perform the services he has been hired to perform, see ABA Standard 4.0, and that ABA Standard 4.42 states that a suspension is generally appropriate when a lawyer knowingly

17

fails to perform services for a client and causes serious or potentially serious injury to a client, as was the case here where Golub knowingly failed to perform services for his client and neglected these matters by failing to communicate with her or her son and failing to consult with them about the cases.

Finally, the Special Master evaluated the aggravating and mitigating factors. As for aggravating factors, the Special Master concluded that Golub had a prior disciplinary history, as he received an investigative panel reprimand in 1999 for violations of Standards 4, 44, and 45 of the Code of Professional Responsibility,[3] see ABA Standard 9.22 (a); that he had substantial experience in the practice of law given that he was admitted to the Bar in 1980, see ABA Standard 9.22 (i); that there were multiple offenses, as he violated six different rules, see ABA Standard 9.22 (d); and that his client was a vulnerable victim "as a result of the trust [she] reposed in [Golub]," *In the Matter of Nesbitt*, 294 Ga. 480, 482 (754 SE2d 363)

---

[3] The Code of Professional Responsibility was supplanted in 2001 by our adoption of the Georgia Rules of Professional Conduct.

18

(2014), see ABA Standard 9.22 (h). As for mitigating factors, the Special Master concluded that Golub lacked a dishonest or selfish motive, see ABA Standard 9.32 (b), where the evidence showed that he took on a legal matter that became overwhelming and difficult for him to pursue to its conclusion and that health matters also prevented him from representing his client adequately. However, the Special Master concluded that while Golub did not initially act with a dishonest or selfish motive, Golub did intentionally fail to keep his client apprised of the case and by his silence misled the client and her son. In addition, the Special Master noted that Golub experienced health issues during his representation of his client and continued to experience some health issues during the course of this disciplinary process, see ABA Standard 9.32 (c); that Golub had expressed genuine remorse for his actions and the harm caused to his client, see ABA Standard 9.32 (l); and that the prior disciplinary matter was remote in time, dating back to 1999, see Standard 9.32 (m).

In conclusion, the Special Master recommended a one-year suspension with the conditions on reinstatement listed above, noting that "the purpose of lawyer discipline is to act as 'a penalty to the offender, a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession,' *In the Matter of Dowdy*, 247 Ga. 488, 493 (277 SE2d 36) (1981)." *In the Matter of Csehy*, 295 Ga. 853, 855 (764 SE2d 540) (2014). In addition, the Special Master noted that this Court previously has imposed discipline by suspending lawyers who failed to competently and diligently represent clients, failed to consult with and abide by client decisions, and abandoned client legal matters. See *In the Matter of Johnson*, 303 Ga. 795, 798-799 (815 SE2d 55) (2018) (six-month suspension for lawyer's violation of Rules 1.3, 1.4, 1.5, 1.15 (I), 1.16 (d), and 5.5 with respect to six client matters he abandoned and failed to make full and proper restitution); *In the Matter of Jaconetti*, 291 Ga. 772, 772-773 (732 SE2d 447) (2012) (three-year suspension with conditions for lawyer who violated Rules 1.2, 1.3, 1.4, 1.7, 1.16 (d), and 8.4 (a) (4) by abandoning or neglecting eight

20

clients); *Hardwick*, 288 Ga. at 61-62   (six-month suspension for lawyer who violated Rules 1.3, 1.4, 3.2, and 8.4 (a) (4) for failing to act on matter, resulting in default judgment against clients); *In the Matter of Bagwell*, 286 Ga. 511, 511 (689 SE2d 316) (2010) (two-year suspension with conditions for lawyer who violated Rules 1.3, 1.4, and 3.2 related to five former clients, three of which had adverse rulings entered against them due to his failure to timely and properly pursue legal matters).

Neither Golub nor the State Bar has filed exceptions to the Special Master's report in this Court.

4. *The Court's conclusion.*

Having reviewed the record, the Court agrees that a one-year suspension with reinstatement conditioned upon his full refund of the attorney fees paid to him for the underlying matter, as well as any cost associated with paying this money into the client's estate in probate, is appropriate in this matter.  See *In the Matter of Hudson*, 283 Ga. 79, 79-80 (656 SE2d 531) (2008) (one-year suspension for attorney who failed to do any substantive work on

two legal matters and failed to refund any portion of retainers paid, violating Rules 1.3, 1.4, 1.16, and 9.3); *In the Matter of Collins*, 261 Ga. 802, 802-803 (411 SE2d 711) (1992) (one-year suspension for attorney who abandoned legal matter entrusted to him, refused to return client's file, and failed to take reasonable steps to avoid prejudice in violation of Standards 22, 44, and 68). At the conclusion of the one-year suspension, Golub may seek reinstatement by demonstrating to the State Bar's Office of General Counsel that he has met the conditions on reinstatement. If the State Bar agrees that the conditions have been met, it will submit a notice of compliance to this Court, and this Court will issue an order granting or denying reinstatement. Golub is reminded of his duties under Bar Rule 4-219 (b).

*One-year suspension with conditions. All the Justices concur.*

Decided May 3, 2022.

Suspension.

*Paula J. Frederick, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, Jenny K. Mittelman, Andreea N. Morrison, Assistant General Counsel State Bar*, for State Bar of Georgia.